**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Carmen I. Rivera |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Pennsylvania |
| Case number | 1918003 |

## Official Form 410S1

# Notice of Mortgage Payment Change

12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount.  File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:**
Wells Fargo Bank, N.A.

**Court claim no.** (if known): N/A

**Date of payment change:**
Must be at least 21 days after date of this notice

03/01/2020

**New total payment:**
Principal, interest, and escrow, if any

$ 1085.45

**Last 4 digits** of any number you use to identify the debtor's account:

2   9   4   6

### Part 1:   Escrow Account Payment Adjustment

1.  **Will there be a change in the debtor's escrow account payment?**

☑ No
☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

Current escrow payment: $ _____          New escrow payment: $ _____

### Part 2:   Mortgage Payment Adjustment

2.  **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

☐ No
☑ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

Current interest rate: _____ 2.00000 %          New interest rate: _____ 3.00000 %

Current principal and interest payment: $ 496.97          New principal and interest payment: $ 556.39

### Part 3:   Other Payment Change

3.  **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

☑ No
☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
    *(Court approval may be required before the payment change can take effect.)*
Reason for change:

Current mortgage payment: $ _____          New mortgage payment: $ _____

| Part 4: | Sign Here |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☑ I am the creditor.

☐ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/Jeremy Anthony                                    Date    01/14/2020

Signature

Print: Jeremy Anthony                                    VP Loan Documentation

First Name        Middle Name        Last Name        Title

Company  Wells Fargo Bank, N.A.

Address  MAC N9286-01Y

Number        Street

1000 Blue Gentian Road

Address 2

Eagan                                    MN        55121-7700

City                                    State        ZIP Code

Contact phone  919-233-5476

Jeremy.Anthony@wellsfargo.com

Email

# UNITED STATES BANKRUPTCY COURT

Eastern District of Pennsylvania

Chapter   13   No. 1918003
Judge:  Eric L. Frank

In re:

Carmen I. Rivera

Debtor(s).

## CERTIFICATE OF SERVICE

I hereby certify that this Notice, including all attachments, is being served on or before January 15, 2020 via filing with the US Bankruptcy Court's CM ECF system or by mailing or providing a copy of this document to a vendor for mailing: By U.S. Postal Service First Class Main Postage Prepaid or FedEx.

Debtor:                           By U.S. Postal Service First Class Mail Postage Prepaid or FedEx

                                  Carmen I. Rivera
                                  320 Dorrance Street

                                  Bristol PA 19007

                                  By U.S. Postal Service First Class Mail Postage Prepaid or FedEx

                                   N/A

Debtor's Attorney:                By Court's CM/ECF system registered email address

                                  PAUL H. YOUNG
                                  Young, Marr & Associates
                                  3554 Hulmeville Road
                                  Suite 102
                                  Bensalem PA 19020

                                  By Court's CM/ECF system registered email address

                                  N/A

Trustee:                          By Court's CM/ECF system registered email address

                                  WILLIAM C. MILLER, Esq.
                                  Chapter 13 Trustee
                                  P.O. Box 1229

                                  Philadelphia PA 19105

                                  /s/Jeremy Anthony

                                  VP Loan Documentation

                                  Wells Fargo Bank, N.A.

# Home Affordable Modification Agreement

Borrower ("I")[1] : **CARMEN I RIVERA and EMILIANO RIVERA**
Lender or Servicer ("Lender"): **Wells Fargo Bank, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **October 26, 2006**
Loan Number:
Property Address ("Property"):
**320 DORRANCE ST**
**BRISTOL, PA  19007**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations**.  I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.    I live in the Property as my principal residence, and the Property has not been condemned;

    C.    There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Home Affordable Modification Agreement - Non GSE

F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do
so; and

G.    I have made or will make all payments required under a Trial Period Plan or Loan
Workout Plan.

2.    **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines
that my representations in Section 1 are no longer true and correct, the Loan Documents
will not be modified and this Agreement will terminate.  In this event, the Lender will have
all of the rights and remedies provided by the Loan Documents; and

B.    I understand that the Loan Documents will not be modified unless and until (i) I receive
from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification
Effective Date (as defined in Section 3) has occurred.  I further understand and agree
that the Lender will not be obligated or bound to make any modification of the Loan
Documents if I fail to meet any one of the requirements under this Agreement.

C.    If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the
Notice of Special Flood Hazard disclosure.

3.    **The Modification**.  If my representations in Section 1 continue to be true in all material respects
and all preconditions to the modification set forth in Section 2 have been met, the Loan
Documents will automatically become modified on **March 1, 2015** (the "Modification Effective
Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have
failed to make any payments as a precondition to this modification under a workout plan or trial
period plan, this modification will not take effect.  The first modified payment will be due on **March
1, 2015**.

A.    The new Maturity Date will be: **April 1, 2045**.

B.    The modified Principal balance of my Note will include all amounts and arrearages that
will be past due as of the Modification Effective Date (including unpaid and deferred
interest, fees, escrow advances and other costs, but excluding unpaid late charges,
collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously
credited to my Loan and less Principal in the amount of **$20,308.41** which has been
forgiven.  The new principal balance of my Note will be **$135,000.00** (the "New Principal
Balance").  I understand that by agreeing to add the Unpaid Amounts to the outstanding
principal balance, the added Unpaid Amounts accrue interest based on the interest rate in
effect under this Agreement.  I also understand that this means interest will now accrue
on the unpaid Interest that is added to the outstanding principal balance, which would not
happen without this Agreement.

C.    Interest at the rate of **2.000**% will begin to accrue on the New Principal Balance as of
**February 1, 2015** and the first new monthly payment on the New Principal Balance will
be due on **March 1, 2015**. Interest due on each monthly payment will be calculated by
multiplying the New Principal Balance and interest rate in effect at the time of calculation

**Home Affordable Modification Agreement - Non GSE**

and dividing the result by twelve (12). My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|----------------------------|
| 1 - 5 | 2.000% | 02/01/2015 | $496.97 | $553.27, adjusts annually after 1 year | $1,050.24, adjusts annually after 1 year | 03/01/2015 | 60 |
| 6 - 6 | 3.000% | 02/01/2020 | $556.39 | Adjusts Annually | Adjusts Annually | 03/01/2020 | 12 |
| 7 - 30 | 3.625% | 02/01/2021 | $594.13 | Adjusts Annually | Adjusts Annually | 03/01/2021 | 290 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    **Additional Agreements**. I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

Home Affordable Modification Agreement - Non GSE

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D.  I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying

the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.    That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

---

**Home Affordable Modification Agreement - Non GSE**

I.      That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.      That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.      That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.      Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.      That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.      I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.   If the original promissory note is replaced, the Lender hereby

---

**Home Affordable Modification Agreement - Non GSE**

indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.    If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

**CARMEN I RIVERA**        (Borrower) (Date)        **EMILIANO RIVERA**        (Borrower) (Date)

(Borrower) (Date)        (Borrower) (Date)

**Wells Fargo Bank, N.A.**

By:

**Gina Thao**
**Vice President Loan Documentation**

Date

**For use only if the borrower is a revocable trust:**
If the borrower is a revocable trust, each trustee must complete and sign the section below. If the borrower is not a revocable trust, this section should be left blank.

_____, Trustee of the _____ Trust under trust
(Trustee signature)                              (Name of trust)

instrument dated _____, for the benefit of _____.

_____

Home Affordable Modification Agreement - Non GSE

Page 7 of 8

(Date of trust)                                        (Borrower name)

---